

FILED
AUG 1 4 2019
Clerk, U.S. District Court
Texas Eastern

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | **FILED UNDER SEAL** |
| | § | |
| V. | § | Case No. 4:19-cr- 192 |
| | § | Judge Mazzant |
| IVAN T. NAVARRO-JUSINO | § | |

### INDICTMENT

THE UNITED STATES GRAND JURY CHARGES:

**General Allegations**

At all times material to the facts set forth in this Indictment:

1. **Ivan T. Navarro-Jusino** was an individual who resided in Wichita Falls, Texas. He maintained control over multiple Bank of America bank accounts held in the name of Blueshare Capital, LLC.

2. DOS was an individual who resided in the city of Ponder, Texas, in the Eastern District of Texas.

3. Bank of America, NA was a federally-insured bank with locations throughout Texas and the United States.

### COUNTS 1 - 3

Violation: 18 U.S.C. § 1343
(Wire Fraud)

4. The General Allegations section of this Indictment is realleged and incorporated by reference as though fully set forth herein.

## The Scheme to Defraud

5. From on or about August, 2012, and continuing up to on or about May, 2018, in the Eastern District of Texas and elsewhere, the Defendant, **Ivan T. Navarro-Jusino** ("**Navarro-Jusino**"), knowingly devised and intended to devise a scheme and artifice to defraud and to unlawfully obtain money and property by means of false and fraudulent material pretenses, false and fraudulent material representations, and false and fraudulent material promises, and during the course of the scheme the Defendant, **Navarro-Jusino**, transmitted and caused to be transmitted by means of wire communication in interstate and foreign commerce, writings, signs, signals, pictures, and sounds for the purpose of executing the scheme and artifice to defraud and for obtaining money and property by means of false and fraudulent pretenses, representations, and promises, and acted with specific intent to defraud. The goal of the scheme was to obtain money and property under the ownership and control of DOS, and to take control of and put that money and property to his own use, without the authority or permission of DOS, and to the loss of DOS.

## Manner and Means

6. During the course of the scheme and artifice, **Navarro-Jusino** represented to DOS that he could invest DOS's money in a high-performing investment fund. DOS relied on these representations and provided funds to **Navarro-Jusino**, believing that **Navarro-Jusino** was going to invest in a legitimate fund. Instead, **Navarro-Jusino** used, transferred, and spent the funds for **Navarro-Jusino's** own purposes. Further, after

taking DOS's funds, **Navarro-Jusino** represented through interstate wire communications that the funds were intact and earning high rates of return, when in fact this was entirely false, in order to delay, lull, and put off DOS from taking any action to retrieve his funds or report the scheme to authorities, all to the detriment and loss of DOS.

7. In or about August, 2012, **Navarro-Jusino** represented to DOS that **Navarro-Jusino** could invest funds that DOS had in a high-performing fund called Blueshare Capital Fund, which was managed by an entity named MB Trading Futures. **Navarro-Jusino** represented to DOS that there were a limited number of investors with money in the fund, and that after DOS invested no more participants in the fund would be allowed, thereby representing both that the fund was exclusive and profitable.

8. Induced by **Navarro-Jusino's** description of the fund, on or about August 3, 2012, DOS wrote a check in the amount of approximately $30,000 and provided it to **Navarro-Jusino**, who then deposited this check into a Bank of America account number XXXX XXXX-2973, held in the name of Blueshare Capital, LLC (the "Blueshare 2973 account"), which account **Navarro-Jusino** controlled. This account was not an investment account, but was instead a business economy checking account. On or about August 24, 2012, again in reliance on and in response to **Navarro-Jusino's** description of the Blueshare Capital Fund, and based on bank wiring instructions provided by **Navarro-Jusino**, DOS caused a wire transfer of funds in the amount of approximately $470,000 to be transmitted from a Bank of America bank account maintained by DOS to the Blueshare 2973 account. DOS executed this wire transaction while he was at his home in

Ponder, Denton County, Texas, in the Eastern District of Texas, and thereby invested the $470,000 in funds per **Navarro-Jusino's** instructions. On or about July 13, 2015, DOS entered into his third and final transaction with **Navarro-Jusino** by providing **Navarro-Jusino** a cashier's check in the amount of approximately $20,000 payable to "Ivan T Navarro-Jusino Jr.," which check **Navarro-Jusino** then deposited into the Blueshare 2973 account. All told, DOS invested approximately $520,000 with **Navarro-Jusino** in the Blueshare Capital Fund. Between in or about August, 2012 and August, 2013, DOS asked **Navarro-Jusino** to return approximately $38,000 of the funds to DOS, which **Navarro-Jusino** did.

9. After **Navarro-Jusino** took control of DOS's funds, as described above, **Navarro-Jusino** did not invest them in any type of fund, but instead used, consumed, spent, and transferred the funds for his own purposes, in a manner completely unknown to DOS and in contradiction to what he represented to DOS would be done with the funds. **Navarro-Jusino** spent the funds on personal expenses such as tickets to a professional football game, a trip to Puerto Rico, and for purchasing personal items such as a vehicle, jewelry, electronics, a car stereo, and furniture. Additionally, **Navarro-Jusino** spent approximately $43,000 of DOS's funds to repay loans that relatives had made to him and separately used other of DOS's funds to purchase a local business, which ultimately failed. These expenditures were to the benefit of **Navarro-Jusino** and his family, but caused DOS to lose the funds that he provided to **Navarro-Jusino** to invest.

10. In or around February, 2016, DOS asked **Navarro-Jusino** to withdraw a portion of DOS's investment funds. **Navarro-Jusino** represented to DOS that **Navarro-Jusino** could not withdraw DOS's funds because a whistleblower had made a complaint that employees were embezzling company funds; later, **Navarro-Jusino** informed DOS that the complaint was no longer pending but that MT Trading Futures would still not release DOS's funds. DOS made requests to **Navarro-Jusino** over the ensuing months for the return of his funds, but **Navarro-Jusino** did not return DOS's funds. Unknown to DOS, by this time **Navarro-Jusino** had spent, transferred, and consumed DOS's investment, and therefore **Navarro-Jusino** had none of DOS's funds to return to DOS.

11. After **Navarro-Jusino** took control of DOS's funds, as described above, and in furtherance of his scheme to defraud and in order to deceive, mislead, and lull DOS, **Navarro-Jusino** sent interstate email communications to DOS, attaching what Navarro-Jusino represented were account statements related to DOS's funds. These included emails that **Navarro-Jusino** sent on or about December 12, 2016, and on or about January 11, 2017. The account statements attached to the emails included statements and representations including: the purported account number, the monthly initial balance, deposits made, the trading balance, profit or loss, "Perf. Alloc," net profit or loss, ending balance for the month, and a running history for the prior year's time of the end balance, profit or loss, and "PNL Percentage." **Navarro-Jusino** also sent an email by interstate transmission on or about May 1, 2017, to which he attached what purported to be a screen shot of the account status for DOS's investment account, again representing and showing a balance of approximately $824,000 in the account. The

account statements and screen shot detailed what appeared to be a successful, increasing, and high-performing investment fund, including showing that DOS's balance in the fund was $824,000. In reality, however, the representations, figures, and information in the monthly emailed statements, and the representations in the account screen shot, were fabrications and series of false and misleading statements: **Navarro-Jusino** had spent the funds as described above, and lied to DOS in furtherance of his scheme to defraud.

12. Through his scheme, as described above, **Navarro-Jusino** took, stole, transferred and spent funds belonging to DOS, ultimately defrauding DOS of approximately $482,000, to the detriment and loss of DOS.

**Execution of the Scheme and Artifice: Interstate Transmissions**

13. On or about the date set forth below, in the Eastern District of Texas and elsewhere, **Navarro-Jusino**, knowingly and for the purpose of executing and attempting to execute the above-described scheme and artifice to defraud and to unlawfully obtain money and property by means of false and fraudulent material pretenses, false and fraudulent material representations, and false and fraudulent material promises, knowingly transmitted and caused to be transmitted by means of wire communications in interstate and foreign commerce the writings, signs, signals, pictures, and sounds described below, and did so with specific intent to defraud:

| COUNT | DATE (ON OR ABOUT) | DESCRIPTION OF THE INTERSTATE WIRE TRANSMISSION |
|---|---|---|
| 1 | December 12, 2016 | Email from Ivan Navarro <bluesharecapital@gmail.com> to D▇ S▇ ▇▇@yahoo.com>; Subject "BCF Report;" with attachment: BCF REPORT 11.2016 DS.pdf |

| COUNT | DATE (ON OR ABOUT) | DESCRIPTION OF THE INTERSTATE WIRE TRANSMISSION |
|---|---|---|
| 2 | January 11, 2017 | Email from Ivan Navarro <bluesharecapital@gmail.com> to d▮ o. s▮ ▮@yahoo.com>; Subject "Re: BCF Report;" with attachment: BCF REPORT 12.2016.pdf |
| 3 | May 1, 2017 | Email from Ivan Navarro <bluesharecapital@gmail.com> to d▮ o. s▮ ▮@yahoo.com>; Subject "Info;" with attachment: DS Account Screen Shot.jpg |

All in violation of 18 U.S.C. § 1343.

## NOTICE OF INTENT TO SEEK CRIMINAL FORFEITURE
### Pursuant to 18 U.S.C. §§ 981(a)(1)(c) and 28 U.S.C. § 2461

As the result of committing the foregoing offense charged this Indictment, the defendant shall forfeit to the United States pursuant to 18 U.S.C.§ 981(a)(1)(c) and 28 U.S.C. § 2461:

Any property constituting, or derived from, and proceeds the defendant obtained, directly or indirectly, as the result of such violations including, but not limited to, funds, United States currency, and all interest and proceeds traceable thereto, as property constituting, or derived from, proceeds obtained directly or indirectly, as the result of the offenses charged in this Indictment.

### Substitute Assets

If any of the property described above as being subject to forfeiture, as a result of any act or omission of the defendant -

    (a) cannot be located upon the exercise of due diligence;

    (b) has been transferred or sold to, or deposited with a third person;

    (c) has been placed beyond the jurisdiction of the court;

    (d) has been substantially diminished in value; or

    (e) has been commingled with other property which cannot be subdivided without difficulty;

it is the intent of the United States, pursuant to 21 U.S.C. § 853(p), to seek forfeiture of any other property of the defendant up to the value of the above forfeitable property, including but not limited to all property, both real and personal owned by the defendant.

By virtue of the commission of the offenses charged in this Indictment, any and all interest the defendant has in the above-described property is vested in the United States and hereby forfeited to the United States pursuant to pursuant to 18 U.S.C. §§ 981(a)(1)(c) and 28 U.S.C. § 2461.

A TRUE BILL

_____      __8/14/19_____
GRAND JURY FOREPERSON      Date


JOSEPH D. BROWN
UNITED STATES ATTORNEY

_____      __8/14/2019_____
BY: THOMAS E. GIBSON      Date
Assistant United States Attorney

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | § **FILED UNDER SEAL** |
| | § |
| V. | § Case No. 4:19-CR- 192 |
| | § Judge Mazzant |
| IVAN T. NAVARRO-JUSINO | § |

## NOTICE OF PENALTIES

### Counts 1 - 3

Violation: 18 U.S.C. § 1343 (Wire Fraud)

Penalty: Imprisonment for a term of not more than 20 years, a fine of not more than $250,000 or not more than the greater of twice the gross pecuniary gain or twice the gross loss from the offense, or both. A term of supervised release of not more than three years in addition to such term of imprisonment.

If the violation affects a financial institution: Imprisonment for a term of not more than 30 years, a fine of not more than $250,000 or not more than the greater of twice the gross pecuniary gain or twice the gross loss from the offense, or both. A term of supervised release of not more than five years in addition to such term of imprisonment.

Special
Assessment: $100.00